# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 24-1369**

**September Term, 2025**

FILED ON: JANUARY 13, 2026

BOUTIQUE AIR INC.,
    PETITIONER

v.

DEPARTMENT OF TRANSPORTATION, ET AL.,
    RESPONDENTS

Petition for Review of
Department of Transportation
Order on Petition for
Reconsideration

Before: SRINIVASAN, *Chief Judge*, PILLARD, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge.*

### J U D G M E N T

This petition was considered on the record from the Department of Transportation and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that Boutique Air Inc.'s petition for review be **DENIED**.

I.

As part of the Airline Deregulation Act of 1978, Congress established the Essential Air Service (EAS) program, under which the Department of Transportation awards subsidies to air carriers to provide air transportation at eligible smaller airports. *See* 49 U.S.C. §§ 41731–46. This case concerns the provision of EAS at the regional airport in Jackson, Tennessee.

The Department generally considers five statutory factors when reviewing applications by air carriers to provide service under the EAS program: (i) an applicant's reliability in providing air service, (ii) any interline or codeshare arrangements an applicant has made with a larger air carrier serving a hub airport, (iii) the community's preference among the applicants, (iv) an

applicant's plan for marketing their services to the community, and (v) the total compensation proposed by an applicant to provide the service. *See id.* § 41733(c)(1)(A)–(F). Additionally, if an EAS community is "less than 175 miles from the nearest large or medium hub airport"—as is true of Jackson, Tennessee—it must have an average EAS subsidy per passenger of less than $650. *Id.* § 41731(a)(1)(C)(iii).

In March 2021, the Department selected Boutique Air Inc. to provide EAS at the regional airport in Jackson for a two-year period. Later in 2021, however, Boutique Air terminated its service. The Department then selected another carrier, Southern Airways, to provide replacement EAS at the Jackson airport through May 2024.

In November 2023, the Department sought proposals from air carriers to provide EAS at the Jackson airport for a new term. The Department ultimately selected Key Lime Air Corporation d/b/a Denver Air Connection (DAC) over Boutique Air and other applicants. Boutique Air filed two petitions for reconsideration, both of which the Department denied. The carrier then brought this petition for review of the Department's decision. *See id.* § 46110(a).

## II.

We review the Department's decision to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Boutique Air argues that the Department's selection of DAC was arbitrary and capricious for three reasons: (i) the selection failed to account for the cost differential between DAC and Boutique Air; (ii) the selection was inconsistent with certain prior EAS decisions; and (iii) the amount of DAC's subsidy proposal risked pushing Jackson above the statutory per-passenger subsidy cap. Those arguments are unavailing.

## A.

Boutique Air first contends that the Department arbitrarily failed to explain why Boutique's lower-cost proposal did not justify selecting it over DAC. The Department, however, adequately explained its selection, including its consideration of cost.

In its initial order selecting DAC over Boutique Air and other carriers, the Department observed that "DAC's proposal meets the air carrier selection criteria the Department is required to consider" under the statute, including because "DAC has interline agreements with larger air carriers, has provided reliable air service at other EAS communities, and included in its proposal a marketing plan to spend a minimum of $20,000 annually." U.S. Dep't of Transp., Order Selecting Air Carrier 4 (Aug. 8, 2024), J.A. 17. In addition, the "community expressed overwhelming preference for DAC, based on its aircraft type, reputation, and reliability in markets

similar to Jackson, and the Department finds DAC's service and subsidy levels reasonable." *Id.*

In its order denying reconsideration, the Department elaborated on its decision with respect to each of the statutory factors. *See* 49 U.S.C. § 41733(c)(1)(A)–(F). With regard to carrier reliability, the Department explained that "DAC has demonstrated its reliability at other EAS communities," whereas Boutique Air, "[w]hen previously selected to provide EAS at Jackson," had "improperly attempted to terminate service without providing proper notice," which "caus[ed] stress for passengers." U.S. Dep't of Transp., Order on Petition for Reconsideration 4–5 (November 21, 2024) (Reconsideration Order), J.A. 24–25. As for the carriers' interline or codeshare arrangements, the Department noted that, while Boutique Air had a codeshare agreement only with United Airlines (which had been terminated in May 2024), "DAC offered interline arrangements with three of the large air carriers: United, American, and Delta." *Id.* at 5, J.A. 25. And concerning cost, the Department acknowledged the higher compensation requested by DAC but "took into account the quality of service offered by DAC as well as the community's comments regarding unsatisfactory performance in the recent past by Southern Airways and Boutique Air." *Id.* The Department explained that "the statute does not require the Department to select the least expensive air service proposal," and "multiple other statutory factors favor DAC's proposal over Boutique Air's proposal." *Id.* at 6, J.A. 26.

That explanation more than sufficed. The Department addressed each statutory factor—including cost—and reasonably explained why the balance of considerations led it to choose DAC over Boutique Air.

B.

Boutique Air next contends that the Department's selection of DAC is inconsistent with two previous EAS decisions in which the Department opted for a lower-cost bidder due to its price. But the very fact that the statute calls for considering various factors in addition to cost confirms that the Department need not always select the lowest-cost bidder. And in each of the decisions highlighted by Boutique Air, while the chosen carrier resembled Boutique Air in one respect in proposing a lower-cost alternative, the chosen carrier also presented a more favorable profile than Boutique Air in other ways.

Boutique Air first points to the Department's 2017 selection of SkyWest to serve Quincy, Illinois. But SkyWest had "a proven record of providing reliable service at several EAS communities," had earned the Quincy community's support, and had proposed using larger aircraft than higher-cost bidders. U.S. Dep't of Transp., Order Selecting Airline 8 (Aug. 28, 2017), J.A. 201. Boutique Air also points to the Department's 2019 selection of Cape Air to serve Rutland, Vermont. Cape Air, though, "ha[d] served Rutland reliably for almost 12 years," and although it was not the community's preferred carrier, there was no other indication that the community was unhappy with Cape Air. U.S. Dep't of Transp., Order Reselecting Air Carrier 3 (June 27, 2019), J.A. 187. Boutique Air, by contrast, had proven unreliable when previously selected to serve

Jackson, was strongly opposed by the community, and offered fewer interline arrangements than the chosen carrier, DAC.

In short, there is no arbitrary inconsistency between the Department's selections of SkyWest for Quincy and Cape Air for Rutland, on one hand, and its selection of DAC over Boutique Air for Jackson, on the other hand.

## C.

In its final challenge, Boutique Air asserts that the Department's selection of DAC is arbitrary because DAC's per-passenger subsidy will likely exceed the statutory subsidy cap applicable to communities like Jackson that are located sufficiently far from a medium- or large-hub airport. *See* 49 U.S.C. § 41731(a)(1)(C)(iii). Even assuming the Department, when selecting an EAS carrier, must consider the potential implications for a community's ability to meet the statutory subsidy cap, the Department adequately did so here.

The statutory subsidy cap is a per-passenger limit. *See id.* As a result, if an EAS carrier can increase the number of passengers served at an airport, the community is more likely to stay within the subsidy cap. Here, the Department was "not persuaded by Boutique Air's argument that its proposal could better assure compliance." Reconsideration Order at 7, J.A. 27. The Department explained that "access to reliable air service may be [Jackson's] best medicine" for attracting enough passengers to remain under the cap, "especially with respect to rebuilding trust in air transportation in the community and increasing enplanements." *Id.* There is no basis for rejecting the Department's judgment on that score. When applying arbitrary-and-capricious review, courts should not simply "substitute [their] judgment for that of the agency" and must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (quotation marks and citation omitted). That standard is satisfied here.

\* \* \* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk